**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALEXANDER SANTIAGO, | |
| Plaintiff, | Civil Action No. 20-650 (MAS) (DEA) |
| v. | **OPINION** |
| JAMEL ELCHEBLI, et al., | |
| Defendants. | |

**SHIPP, District Judge**

Plaintiff is incarcerated at New Jersey State Prison in Trenton, NJ.  He is proceeding *pro se* with a civil rights Complaint pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, New Jersey's Law Against Discrimination ("NJLAD"), N.J. Stat. §§ 10:5-1 to 10:5-50, and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. §§ 10:6-1 to 10:6-2.  The Court has screened the Complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit, and concludes, with the following caveats, that dismissal of the entire Complaint is not warranted at this time.

## I.    BACKGROUND

The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion.  This case arises from Plaintiff's requests to attend certain group religious services

provided at New Jersey State Prison.  Plaintiff names Jamel Elchebli, Supervisor of Religious Services, and the Religious Issues Committee as Defendants in this matter.

Plaintiff is of Taino Indian descent.  (ECF No. 1 at 40.)  At an unpled point in time, Plaintiff submitted a "declaration of faith," seeking to be removed from the Catholic service list and added to the Native American service list.  (*Id.* at 3.)  When prison officials did not place him on the Native American service list, Plaintiff submitted several inquiries to Defendant Elchebli beginning on March 10, 2019.  (*Id.* at 3–4.)  Each time, Defendant Elchebli informed Plaintiff that he needed to await a decision from the Religious Issues Committee.  (*Id.*)

According to Defendant Elchebli, the Native American community had complained to the Committee that certain people seeking to be added to the Native American service list were not native and could not be added without an invitation.  (*Id.* at 39.)  As a result, the Committee asked all chaplaincy services at state institutions to hold all requests until the Committee makes a decision regarding how to determine who is Native American and the procedures for accepting a person to be added to the Native American service list.  (*Id.*)

Not satisfied with this answer because of his descent, Plaintiff submitted additional inquiries over the span of approximately seven months.  (*Id.* at 4–5.)  Each time prison officials told Plaintiff that the Committee would review his request.  (*See id.*)  After Plaintiff waited over a month from the latest response on November 29, 2019, which indicated that an update to his request is forthcoming, Plaintiff filed the instant Complaint on January 16, 2020.  (*Id.* at 5.)

## II.    LEGAL STANDARD

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis.  See* 28 U.S.C. § 1915(e)(2)(B).  District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See id.*  According to the

Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, New Jersey's Law Against Discrimination ("NJLAD"), N.J. Stat. §§ 10:5-1 to 10:5-50, and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. §§ 10:6-1 to 10:6-2, contending that Defendants' delay or refusal to place him on the Native American service list violated Plaintiff's civil rights.

As an initial matter, the Complaint names the "Religious Issues Committee, In Their Individual and Official Capacities" as a defendant. (ECF No. 1 at 2.) The Complaint later clarifies that Plaintiff intended to name the yet-to-be-ascertained, individual members that comprise the Religious Issues Committee as "John Doe" defendants. (*Id.* at 3.) Accordingly, the Court will dismiss without prejudice Plaintiff's claims against the Religious Issues Committee itself. Plaintiff will be given ninety days in which to file an amended complaint that names the individual members of the Religious Issues Committee associated with the claims that are being permitted to proceed

3

as stated in this Opinion.  The analysis below will address only Defendant Elchebli and the "John Doe" Defendants who comprise the Religious Issues Committee.

### A. Eleventh Amendment Immunity and Statutory Limitation on Compensatory Damages

Plaintiff brings claims against the Defendants in their official and individual capacities.  As explained below, the Court will dismiss Plaintiff's § 1983 and state law claims to the extent they seek non-injunctive relief against the Defendants in their official capacities because the Eleventh Amendment bars such claims.  The Court will also dismiss Plaintiff's RLUIPA claim against the Defendants in their individual capacities and Plaintiff's RLUIPA claim against the Defendants in their official capacities to the extent it seeks monetary damages.  Finally, the Court will further dismiss Plaintiff's claims for compensatory damages.

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or Subjects of any Foreign State."  U.S. CONST. amend. XI.  Thus, the Eleventh Amendment imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).  Moreover, the bar extends to claims against a state official in his or her official capacity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.").

Eleventh Amendment immunity, however, is not absolute.  A state may consent to suit in federal courts, or Congress may abrogate Eleventh Amendment protections.  *See Port Auth. Trans-Hudson Corp. v. Freeney*, 495 U.S. 299, 304 (1990).  Further, the Eleventh Amendment does not

bar a suit for prospective injunctive relief against a state official who violates federal law, *see Ex parte Young*, 209 U.S. 123, 158–59 (1908), or a suit against officials in their individual capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

Here, Defendant Elchebli, in his official capacity as the Supervisor of Religious Services of the New Jersey State Prison, is a state official.   Likewise, the individual members of the Religious Issues Committee are state officials.   Accordingly, the Eleventh Amendment bars Plaintiff's § 1983 and state law claims seeking monetary, but not injunctive, relief with respect to the Defendants in their official capacities.   The Court, therefore, will dismiss Plaintiff's § 1983 and state law claims with prejudice to the extent they seek monetary relief from Defendants in their official capacities.

RLUIPA, however, permits plaintiffs to "obtain appropriate relief against a government." *Sharp v. Johnson*, 669 F.3d 144, 153 (3d Cir. 2012) (citing 42 U.S.C. § 2000cc-2).   The statute defines "Government" to include state entities, their agencies, and any other person acting under color of State law. *See id.* (citing 42 U.S.C. § 2000cc-5(4)(A)).   Thus, RLUIPA applies to state employees acting in their official capacities but not their individual capacities. *See id.*  Moreover, a plaintiff may not sue a state or state official for monetary damages under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277, 288, 293 (2011) (holding that States, by accepting federal funds, do not consent to waive their sovereign immunity to suits for money damages under RLUIPA). Accordingly, the Court will dismiss with prejudice Plaintiff's RLUIPA claims against the Defendants in their individual capacities and Plaintiff's RLUIPA claims against the Defendants in their official capacities to the extent it seeks monetary damages.

Plaintiff also seeks relief for compensatory damages, among other things, but fails to demonstrate physical injury or the commission of a sexual act. (*See generally* ECF No. 1.)  42

U.S.C. § 1997e bars compensatory damages for mental and emotional injuries in cases brought by prisoners "without a prior showing of physical injury or the commission of a sexual act[.]" *See Rogers v. McKisshen*, No. 13-3771, 2018 WL 3201784, at *12 (D.N.J. June 29, 2018); 42 U.S.C. § 1997e(e). The only actual injury that could form the basis for the award Plaintiff seeks would be mental and/or emotional injury and Plaintiff has not alleged physical injury or commission of a sexual act. Accordingly, the Court will dismiss Plaintiff's claims against the Defendants to the extent they seek compensatory damages.

Accordingly, Plaintiff may proceed with his § 1983 and state law claims against Defendants in their official capacities for injunctive relief and against the Defendants in their individual capacities for non-compensatory, monetary damages (*e.g.*, nominal or punitive damages) and injunctive relief. Plaintiff may further proceed with his RLUIPA claim against Defendants in their official capacities for declaratory/injunctive relief.

### B. Section 1983 Free Exercise Claim

Having narrowed the scope of Plaintiff's claims and the relief available, the Court must now determine whether Plaintiff states a claim under § 1983. As set forth below, Plaintiff adequately states a claim for relief.

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Plaintiff alleges that Defendants, acting under the color of state law, violated his First Amendment right to the free exercise of religion.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Although Plaintiff is incarcerated, "convicted prisoners do not forfeit all constitutional protections

by reason of their conviction and confinement in prison." *DeHart v. Horn*, 227 F.3d 47, 50–51 (3d Cir. 2000). Rather, inmates retain their First Amendment right of free exercise of religion. *Id.*

Nevertheless, prison regulations which impugn the free exercise of religion will be valid where the regulation is rationally related to the prison's legitimate penological interests. *Id.* at 51. In determining whether the challenged prison action passes this constitutional scrutiny, courts look to four factors: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest justifying it; (2) whether the prisoner retains an alternative means of exercising his rights; (3) the costs of accommodating the prisoner's interests; and (4) whether there are alternatives to the regulation which would fully accommodate the prisoner's rights at *de minimis* cost to the prison's penological interests. *Id.*

Moreover, the mere assertion of a religious belief does not automatically trigger First Amendment protections. *See id.* Only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. *Id.*

In this matter, Plaintiff raises a free exercise claim based on the alleged delay or denial of his ability to attend group religious services. (*See* ECF No. 1, at 30–31.) The religious nature of the services is not in question. Further, Plaintiff asserts that his beliefs are sincere. (*Id.* at 5.) From Plaintiff's apparent persistence in seeking to attend such religious services over the course of approximately seven months, Plaintiff alleges sufficient factual matter to infer that his assertion is plausible.

Plaintiff also alleges that he has been kept from performing his religious practice without a legitimate governmental interest justifying the restriction. (*Id.* at 30.) In support of his allegations, Plaintiff includes exhibits consisting of communications with corrections personnel. From the communications, it appears that corrections personnel delayed or denied Plaintiff's request because the Native American community complained to the Religious Issue Committee

that certain people on the service list were not Native American.  (*Id.* at 39.)  The Committee, in turn, requested that state institutions hold all requests until a decision is made regarding how to determine who is Native American.  (*Id.*)

Although Plaintiff responded that he was, in fact, of Taino Indian descent, corrections personnel continued to hold Plaintiff off the service list for months without further explanation.  (*Id.* at 40.)  Defendants, it appears, made no effort to verify Plaintiff's ancestry or to determine whether other acceptable alternatives existed in the meantime.  From this, the Court concludes that Plaintiff pleads sufficient factual matter to show that his delay or denial to attend group services impugned his right to the free exercise of religion sufficiently to state a claim for relief under § 1983.  Accordingly, the Court will allow his § 1983 claims to proceed past this initial screening stage.

**C.     RLUIPA Claim**

The Court must determine next whether Plaintiff states a claim under RLUIPA.  For the reasons set forth below, the Court concludes that Plaintiff sufficiently states a claim under RLUIPA.

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrict means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.  Thus, to state a claim under RLUIPA, a plaintiff must allege (1) an unreasonable and substantial burden on a (2) sincerely held (3) religious belief.  A substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religious and forfeiting benefits otherwise generally available to other inmates versus abandoning

8

one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).

Plaintiff has plausibly alleged a substantial burden on his religious exercise. Under the first alternative, Plaintiff does not assert that he faces a forced choice between a generally available benefit and the exercise of his religion. (*See generally* ECF No. 1.) Plaintiff's allegations, however, are sufficient under the second alternative because they plausibly suggest that officials pressured him to substantially modify his behavior to not attend group religious services. (*See generally id.*) As discussed above, Plaintiff also sufficiently pleads that his beliefs are sincere and the religious nature of the services are not at issue. Accordingly, as Plaintiff has alleged sufficient factual support for each element of his RLUIPA claim, the Court will allow Plaintiff's RLUIPA claim to proceed.

### D.  State Law Claims

The Complaint also raises state law claims for violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. §§ 10:5-1 to 10:5-50 and the New Jersey Constitution. The Court will exercise its supplemental jurisdiction over these claims and allow them to proceed. *See* 28 U.S.C. § 1367(c)(3).

#### 1.  NJLAD Claim

The Court construes the Complaint as alleging that Defendants discriminated against Plaintiff based on his creed by subjecting him to administrative hurdles not applied to prisoners seeking to be added to service lists for other religions.

The NJLAD prohibits discrimination in a place of public accommodation. Specifically, the NJLAD makes it unlawful "[f]or any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from

or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the . . . creed . . . of such person . . . ." N.J. Stat. § 10:5-12(f)(1).  Courts interpreting New Jersey law have found that prisons are places of public accommodation under NJLAD.  *See, e.g., Chisolm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001); *Brewer v. Hayman*, No. 06-6294, 2009 WL 2139429, at *8 (D.N.J. July 10, 2009); *Moore v. Correctional Med. Servs. et al.*, No. 07-3703, 2008 WL 4512856, at *3 (D.N.J. Sept. 30, 2008).

To state a claim under the NJLAD for discrimination by a place of public accommodation, a Plaintiff must: (1) demonstrate that he is a member of a protected class; (2) show that the defendant's actions were motivated by discrimination; and (3) demonstrate that others outside the protected class did not suffer similar adverse actions. *Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *14 (D.N.J. Aug. 31, 2020).  Plaintiff has demonstrated that he is a member of a protected class by alleging that he practices the Native American religion.

To meet the second element, Plaintiff must allege facts sufficient to create an inference that discrimination motived Defendants' actions.  At this early screening stage, Plaintiff has sufficiently demonstrated that discrimination motivated Defendants' actions.  Plaintiff alleges that "Defendants ongoing Discrimination is denying Plaintiff his right to religious freedom." (*See* ECF No. 1 at 31.)  Plaintiff also alleges that officials do not subject prisoners of other faiths to the same administrative hurdles. (*See id.* at 41.)  Further, Plaintiff alleges that even after he informed prison officials of his Native American descent, they still held him off the Native American service list without further justification or explanation.  (*Id.* at 31–32.)  From these allegations, accepted as true, a reader of the Complaint could plausibly infer that this refusal to place Plaintiff on the Native American service list was discriminatorily motivated.  *See Leanne Wright-Philips*, No. 20-14609, 2021 WL 1221111, at *13 (D.N.J. Apr. 1, 2021) (determining that Black plaintiff's allegations that

10

defendant flight attendant refused to provide routine medical care to him despite caring for a white passenger, created a hostile environment onboard, and held animus against Plaintiff sufficed to show discriminatory motive).

Finally, Plaintiff has alleged sufficient facts to infer that others not within the protected class did not suffer similar adverse actions by alleging that officials do not subject prisoners of other faiths to the same administrative hurdles. (*See* ECF No. 1 at 47.)   In fact, according to Plaintiff, the Chaplain Department does not even review requests for prisoners seeking to be added to Catholic, Islamic, and Protestant services. (*See id.*)  Accordingly, the Court will allow Plaintiff's NJLAD claim to proceed past this screening stage.

### 2.  Violation of New Jersey Constitution Claim

The Court construes Plaintiff's claim under the New Jersey Constitution to be a claim under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. § 10:6-2.  *See George v. Bd. of Educ. of Twp. of Millburn*, 34 F. Supp. 3d 442, 458 (D.N.J. 2014) (finding that the NJCRA provides a cause of action to address violations of the New Jersey Constitution).  Because the Court has already determined that Plaintiff has sufficiently stated an analogous free exercise claim under the federal Constitution, and because courts interpret the New Jersey Constitution analogously to the federal Constitution, *see Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 444 (D.N.J. 2011), the Court will permit these claims to proceed as well.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court will dismiss without prejudice Plaintiff's claims against the Religious Issues Committee.  Plaintiff will be given ninety days in which to file an amended complaint that names the individual members of the Religious Issues Committee associated with the claims that the Court will permit to proceed as stated in this Opinion.

The Court will also dismiss with prejudice Plaintiff's § 1983 and state law claims against the remaining Defendants to the extent that they seek non-injunctive relief from Defendants in their official capacities.  The Court will further dismiss with prejudice Plaintiff's RLUIPA claim against Defendants in their individual capacities and Plaintiff's RLUIPA claim against Defendants in their official capacities to the extent it seeks monetary damages.  Finally, the Court will dismiss with prejudice all claims against Defendants to the extent that they seek compensatory damages.

Plaintiff may proceed with his § 1983 and state law claims against Defendants in their official capacities for injunctive relief and against Defendants in their individual capacities for non-compensatory, monetary damages and injunctive relief.  Plaintiff may further proceed with his RLUIPA claim against Defendants in their official capacities for declaratory/injunctive relief. An appropriate Order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE